NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RJR MECHANICAL, INC., | Civil Action No.: 12-cv-1810 |
| Plaintiff, | |
| v. | **OPINION** |
| KAREN VASSALLO, <u>et al.</u>, | |
| Defendants. | |

**CECCHI, District Judge.**

## I.     INTRODUCTION

This matter comes before the Court on the motion (ECF No. 21) of Plaintiff RJR Mechanical, Inc. ("Plaintiff") for summary judgment on all nine of the affirmative defenses pleaded in the Answer (ECF No. 6, hereinafter, "Ans."), or alternatively to strike those defenses, as well as the cross-motion (ECF No. 25) of Defendants Karen Vassallo ("Karen"), Harry Vassallo ("Harry"), and Coastal Sun Metals, Inc. ("CSM," together, "Defendants") for judgment on the pleadings or alternatively summary judgment. The Court has considered the submissions made in support of and in opposition to the instant motions. The motions are decided without oral argument pursuant to Fed. R. Civ. P. 78(b).[1]  For the reasons set forth below, Defendants' motion is DENIED, and Plaintiff's motion is GRANTED in part and DENIED in part.

---

[1] The Court considers any new arguments not presented by the parties to be waived.  <u>See</u> <u>Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.</u>, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

## II. BACKGROUND

The parties have submitted briefs, statements of material fact pursuant to Local Rule 56.1, declarations, and exhibits, reflecting the following factual background. Because certain aspects of the instant motions involve evaluating the sufficiency of the pleadings, where relevant, the Court will also discuss the contents of the (operative) Amended Complaint (ECF No. 5, hereinafter, "Compl.") and the Answer.

### A. Factual Background

Plaintiff is a New York corporation that operates as a heating, ventilation, and air conditioning contractor. (ECF No. 21-1, hereinafter "Pl.'s 56.1," ¶¶ 1-2). Plaintiff's president is Roy Leibowitz ("Leibowitz"). Defendants Harry and Karen Vassallo are a married couple residing in New Jersey. (Pl.'s 56.1 ¶ 3; Compl. ¶ 8; Ans. ¶ 8). Defendant CSM is a New Jersey corporation, of which Harry is a shareholder. (Pl.'s 56.1 ¶ 4). Plaintiff claims both Harry and Karen controlled CSM, while Defendants contend Harry was the sole shareholder, and Karen was never a shareholder, director, officer, or employee of CSM. (Pl.'s 56.1 ¶ 4; ECF No. 25-2, hereinafter "Defs.' 56.1," ¶¶ 4, 31). During the relevant time period, Harry worked for Coastal Sheet Metal Corp. ("Coastal"), a sheet metal contractor (not to be confused with CSM), although the parties disagree about whether Harry was "officially" the president of Coastal. (Pl.'s 56.1 ¶¶ 5-6; Defs.' 56.1 ¶¶ 5-6).

According to the Amended Complaint, Harry and Karen secretly formed CSM, which has the same initials as Coastal Sheet Metal, as part of a plan to steal Coastal's receivables by directing some of Coastal's customers to make checks payable to "CSM," then depositing these checks into CSM's bank account. (Compl. ¶ 13). Harry and Karen allegedly covered up the diversion of these checks by intercepting Coastal's mail and omitting transactions from Coastal's records. (Id.).

2

Harry and Karen allegedly used the money in the CSM bank account for their own personal use, including the purchase of property. (Id.).

Defendants allegedly used this plan to divert money Plaintiff tried to pay to Coastal. At issue in this case are three checks totaling $112,812.50: two that Plaintiff made payable to "CSM" on February 12 and 27, 2001, and one that Plaintiff made payable to "Coastal Sheet Metal" in July 2001. (Pl.'s 56.1 ¶¶ 9, 11-21; Defs.' 56.1 ¶¶ 9, 11-21). Plaintiff contends it intended these checks as payment for work Coastal performed as Plaintiff's subcontractor on a construction project at the State University of New York Health Sciences Center ("the Project"), located in Brooklyn, New York. (Pl.'s 56.1 ¶¶ 11-16). According to Plaintiff, Harry instructed Roy Leibowitz—Plaintiff's president—to make the two February checks payable to "CSM," and deposited all three checks in CSM's bank account. (Id. ¶¶ 9, 17, 20). Allegedly, Leibowitz agreed to give Harry these checks because Harry "misrepresented to [Plaintiff] that he was the owner of Coastal and/or that he had the authority to direct the manner in which [Plaintiff] should make payments to Coastal," and that Harry was collecting payment for the work Coastal did on the Project. (Compl. ¶¶ 37-40). Plaintiff claims Leibowitz did not know CSM was a company separate from Coastal or that Harry was using it to divert Coastal's receivables. (Pl.'s 56.1 ¶ 10).

In 2004, Coastal sued Plaintiff in Supreme Court, New York County. (Pl.'s 56.1 ¶ 22). Coastal alleged Plaintiff had failed to pay the outstanding $397,818.74 it owed for Coastal's subcontracting work on the Project. (Certification of John R. Altieri, ECF No. 25-3, hereinafter "Altieri Cert.," Ex. C). On January 30, 2009, a jury in that action awarded Coastal $185,681.12 on a verdict sheet indicating the award was "for the work [Coastal] performed pursuant to the terms of the contract between the plaintiff Coastal and the defendant RJR ('contract work'), and the additional work authorized by defendant RJR ('extra work')[.]" (Altieri Cert. Ex. D).

3

Judgment in this amount plus $92,914.83 in interest was entered against Plaintiff on April 22, 2009. (Decl. of Roy Leibowitz in Supp. of Pl.'s Mot. for Summ. J., ECF No. 21-3, hereinafter "Leibowitz Decl.," Ex. D). Plaintiff contends it would not have had to pay as large a verdict had Coastal received the checks Defendants allegedly diverted. (Pl.'s 56.1 ¶¶ 26-27; Compl. ¶ 24).

Relevant to the defenses at issue in the present motions, Defendants contend Leibowitz was "involved with the diversion of the three checks." (Harry Vassallo Certification, ECF No. 25-6, hereinafter "Vassallo Cert." ¶ 23). According to Harry Vassallo, Leibowitz agreed to make the three checks payable to CSM even though Leibowitz knew Plaintiff owed no money to CSM. (Id. ¶¶ 7-8). Defendants identify a discrepancy between Leibowitz's records and those of Plaintiff's employee, Larry Karpman ("Karpman"): Leibowitz's list of checks paid to Coastal includes the three checks at issue, while Karpman's does not.[2] (Id. ¶ 20). On the other hand, Harry Vassallo also indicates he told Leibowitz the three checks would be credited to Plaintiff's account with Coastal (id. ¶ 8), and asserts that the three checks were in fact credited to that account, "so [Plaintiff] never lost money due to the checks." (Id. ¶¶ 8, 23).

Harry also claims CSM paid several checks to Leibowitz totaling $10,000 beginning in April and May of 2001, possibly (it is unclear from Defendants' submissions) in connection with negotiating a reduction of $50,000 in the contract price owed to Coastal for its work on the Project. (Vassallo Cert. ¶ 22). Defendants also submit an excerpt of Leibowitz's testimony from the trial between Coastal and Plaintiff, in which Leibowitz testified he received three to four checks for doing Coastal's paperwork on evenings and weekends, but could not remember whether the checks came from CSM as opposed to Coastal. (Altieri Decl. Ex. M.). This trial testimony indicates

---

[2] According to Defendants' 56.1 statement, it is the other way around: Leibowitz's list omits the three checks while Karpman's list includes them. (Defs.' 56.1 ¶ 39 (citing Vassallo Cert. ¶ 20)).

Leibowitz exercised his Fifth Amendment right not to testify when asked at a previous deposition (1) whether he ever received money from CSM, and (2) whether he had received "anything of value from Mr. Vassallo as a result of moneys paid by [Plaintiff] to [CSM] on [the Project]." (Id.).

Finally, Defendants point to the testimony of a Coastal employee at the trial between Coastal and Plaintiff, wherein the employee testified Leibowitz told him one of Coastal's invoices was "overstated; that Harry and himself – he, in turn, allowed Coastal to bill more than what we're entitled to bill. In other words, it's like an exaggerated bill[.]" (Altieri Cert. Ex. I).

### B.    Procedural History

Plaintiff commenced this action on March 23, 2012 (ECF No. 1), and filed the Amended Complaint on July 5, 2012. (ECF No. 5). In the Amended Complaint, Plaintiff brings four claims, apparently asserting each against all three defendants: unjust enrichment (Count One), tortious interference with contract (Count Two), fraud (Count Three), and civil violation of the federal Racketeer Influenced and Corrupt Organizations Act ("civil RICO") (Count Four). (Id.).

Defendants answered on July 18, 2012. (ECF No. 6). The answer lists nine "Separate Defenses" that appear to be affirmative defenses:

1. Failure to state a claim upon which relief can be granted (First Defense);

2. Statute of limitations (Second Defense);

3. "Lack of Jurisdiction" (Third Defense);

4. Unclean hands (Fourth Defense);

5. "The answering party was not guilty of any negligence, wrongdoing or breach of duty as claimed" (Fifth Defense);

6. Contributory or comparative negligence pursuant to N.J.S.A. 2A:15-5.1, et seq. (Sixth Defense);

7. "Lack of privity between the parties" (Seventh Defense);

8. The "Entire Controversy Doctrine" (Eighth Defense); and

9. Res judicata (Ninth Defense).

(Ans. 5-7).

On May 30, 2014, Plaintiff moved for summary judgment on all nine affirmative defenses, or alternatively to strike them from the Answer. (ECF No. 21-2, hereinafter "Pl.'s Br.," at 4-5). Defendants opposed the motion and cross-moved for judgment on the pleadings or alternatively summary judgment as to all claims, relying solely on statute of limitations grounds. (ECF No. 25-1, hereinafter "Defs.' Br.," at 6-8 ("[D]efendants do not here need to challenge Plaintiff's four alleged claims in a dispositive fashion . . . and have chosen not to move affirmatively for dismissal based upon the separate defenses except for the statute of limitations defense.")). Plaintiff opposed the cross-motion and replied in support of its original motion on July 14, 2014. (ECF No. 26, hereinafter "Pl.'s Reply Br."). On December 16, 2014, the Court administratively terminated the motions pending the outcome of mediation, before reinstating them on May 4, 2015. (ECF Nos. 28, 29). The parties have also submitted supplemental briefs regarding choice of state law. (ECF No. 31, hereinafter, "Pl.'s Supp. Br."; ECF No. 33, hereinafter, "Defs.' Supp. Br.").

## III.   LEGAL STANDARDS

### A.   Failure to State a Claim

The legal standard for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Caprio v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142, 146-47 (3d Cir. 2013). Thus, under either standard, to survive, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a complaint states a claim, the Court

must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "A pleading that offers labels and conclusions will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated . . . . Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Because statute of limitations is an affirmative defense, a claim may be dismissed for failure to state a claim on statute of limitations grounds only if it is apparent on the face of the complaint that the claim is time-barred. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

### B. Summary Judgment

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of proving the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, a genuine issue of material fact exists for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In order to meet its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Luian v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit"); Big Apple BMW. Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact," the opponent must "exceed the 'mere scintilla' threshold . . . .").

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

C.    **Motion to Strike**

Federal Rule of Civil Procedure 12(f) states:

> (f) Motion to Strike.  The court may strike from a pleading an insufficient defense or any redundant material, impertinent, or

8

scandalous matter. The court may act:

> (1) on its own; or

> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f).

"As a general matter, motions to strike under Rule 12(f) are highly disfavored." FTC v. Hope Now Modifications, LLC, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011). "The successful motion to strike is granted to 'save time and expense' by clearing away pleadings 'which will not have any possible bearing on the outcome of the litigation.'" Id. (citing Garlanger v. Verbeke, 223 F. Supp. 2d 596, 609 (D.N.J. 2002)). Additionally, "even where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." Id. (citing Symbol Techs., Inc. v. Aruba Networks, Inc., 609 F. Supp. 2d 353, 359 (D. Del. 2009)).

## IV.   DISCUSSION

### A.   Defendants' Cross-Motion

If Defendants are correct that all claims in the Amended Complaint are time-barred, this case ends. Therefore, the Court will decide Defendants' cross-motion first.

#### 1.   State Law Claims

With the exception of the civil RICO claim, plaintiff's claims arise from state law. Plaintiff contends New Jersey law applies (Pl.'s Supp. Br. at 6), while Defendants contend New York law applies (Defs.' Supp. Br. at 2-4).

"[A] federal court sitting in diversity must apply the forum state's choice of law rules." Snyder v. Farnam Cos., 792 F. Supp. 2d 712, 717 (D.N.J. 2011) (citing Klaxon Co. v. Stentor Elec.

Mfg. Co., 313 U.S. 487, 496 (1941)). Under New Jersey choice of law rules, "[t]he first step is to determine whether an actual conflict of law exists, for if no conflict exists, the law of the forum state applies." Id. Thus, the Court will determine whether any of the state law claims would be barred under New York's statute of limitations but not New Jersey's, or vice-versa.

Tort law in both New York and New Jersey recognizes that a claim does not accrue, and therefore the statute of limitations does not begin to run, before a plaintiff has suffered damages. See Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94 (1993) ("[A]s a general proposition, a tort cause of action cannot accrue until an injury is sustained."); P.T. & L Constr. Co. v. Madigan & Hyland, Inc., 245 N.J. Super. 201, 207 (App. Div. 1991) ("A cause of action grounded in tort accrues, not when the tortious act occurs, but when the consequential injury or the damage occurs." (citing Diamond v. N.J. Bell Tel. Co., 51 N.J. 594, 596 (1968))).

Plaintiff argues, persuasively, that it did not suffer an injury from Defendants' alleged actions until April 22, 2009, when judgment was entered against Plaintiff ordering it to pay Coastal. (Pl.'s Br. at 6-7). Nobody disputes that Plaintiff received the benefit of Coastal's subcontracting work back in 2001, despite the alleged fact that Harry Vassallo and CSM had diverted three checks owed to Coastal toward the CSM account. Nor do Defendants identify any other injury Plaintiff suffered before the judgment was entered. Thus, under both New York and New Jersey law, Plaintiff's tort claims accrued, at the earliest, on April 22, 2009.[3]

---

[3] Defendants' extensive arguments about the inapplicability of the "discovery rule" are misplaced. The Court does not rely on the discovery rule to determine this accrual date.

Defendants also argue the tort claims accrued before the jury verdict was entered because "a claim accrues at the 'moment of the wrong.'" (Defs.' Supp. Br. at 8 (citing Amland Properties Corp. v. Aluminum Co. of Am., 808 F. Supp. 1187, 1190 (D.N.J. 1992); Michaels v. State of N.J., 955 F. Supp. 315, 326 (D.N.J. 1996); IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 140-41 (2009)). But the cases Defendants cite explain that the "moment of the wrong" means when all elements of a cause of action are present. Michaels, 955 F. Supp. at 326; Amland, 808

10

The statute of limitations for unjust enrichment is six years both in New York, Coombs v. Jervier, 74 A.D.3d 724, 724 (N.Y. App. Div. 1st Dep't 2010), and New Jersey, Rubinsky v. Zayat, Civ. No. 2:14-01540(WJM), 2015 WL 3517629, at *3 (D.N.J. June 4, 2015) (citing N.J.S.A. § 2A:14-1). Although ordinarily, unjust enrichment is a quasi-contract claim rather than a tort, Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 516 (2012); Castro v. NYT Television, 370 N.J. Super. 282, 299 (App. Div. 2004), as discussed below, see infra Section IV.B.1.a, Plaintiff has actually asserted a tort claim under the banner of unjust enrichment. Therefore, the Court treats this claim as a tort claim for the purposes of determining when the cause of action accrued. See, e.g., Blystra v. Fiber Tech Grp., Inc., 407 F. Supp. 2d 636, 645 n.11 (D.N.J. 2005) (declining to apply the "last rendition of services" test to a purported unjust enrichment claim that was actually a tort claim).

The statute of limitations for tortious interference is three years in New York, Amaranth LLC v. J.P. Morgan Chase & Co., 71 A.D.3d 40, 48 (N.Y. App. Div. 1st Dep't 2009); Mannix Indus. v. Antonucci, 191 A.D.2d 482, 483 (N.Y. App. Div. 2d Dep't 1993) (citing N.Y. C.P.L.R. § 214(4)), and six years in New Jersey. Fraser v. Bovino, 317 N.J. Super. 23, 34 (App. Div. 1998) (citing N.J.S.A. § 2A:14-1).

The statute of limitations for fraud in New York is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8). In New Jersey, it is six years. Curtiss-Wright Corp. v. Rodney Hunt Co., 1 F. Supp. 3d 277, 284 (D.N.J. 2014) (citing N.J.S.A. §§ 2A:14-1, 14-2).

---

F. Supp. at 1190; IDT Corp., 12 N.Y.3d at 140. Thus, these cases are not contrary to the proposition that, in tort, a cause of action does not start to run until a plaintiff suffers damages.

Plaintiff filed this lawsuit on March 23, 2012, less than three years after the causes of action in tort accrued on April 22, 2009. Therefore, Counts One, Two, and Three are all timely.

### 2. RICO Claim (Count Four)

RICO claims have a four-year statute of limitations that runs from the time a plaintiff (1) suffers an injury; and (2) knows or should know of the source of the injury. Prudential Ins. Co. of Am. v. United States Gypsum Co., 359 F.3d 226 (3d Cir. 2004). Plaintiff did not suffer an injury until April 22, 2009, and filed this action less than four years later. Thus, Count Four is timely.

For these reasons, Defendants have both failed to show that the Amended Complaint is time-barred on its face under Rule 12(c), and failed to submit evidence that summary judgment is warranted on statute of limitations grounds. Therefore, Defendants' motion is denied.

### B. Plaintiff's Motion

Plaintiff moves for summary judgment on, or alternatively to strike, all nine of the affirmative defenses asserted in the Answer.

As an initial matter, the Court declines to strike any of the defenses from the pleadings because Plaintiff has not shown how the continued presence of any defense "may cause prejudice to one of the parties[.]" Burke v. Weight Watchers Int'l, Inc., 983 F. Supp. 2d 478, 484 (D.N.J. 2013). Moreover, they will not "confuse the issues in the case," see id., because in deciding this motion, the Court will grant summary judgment on the non-meritorious defenses and leave in place potentially meritorious ones, eliminating confusion on which defenses remain.

The Court discusses the summary judgment motion with respect to each defense in turn.

### 1. Failure to State a Claim Upon Which Relief Can Be Granted (First Defense)

Plaintiff contends there is no material issue as to whether the Amended Complaint states a claim upon which relief can be granted. Thus, the Court must evaluate whether Plaintiff has

sufficiently pleaded claims for unjust enrichment, tortious interference with contract, fraud, and civil RICO.[4] For each claim, the Court will grant summary judgment on this defense if the Amended Complaint states a claim, and deny summary judgment if it does not. However, because Defendants have not moved to dismiss any of Plaintiff's claims for failure to state a claim (except with respect to statute of limitations, discussed above), the denial of summary judgment on the defense of failure to state a claim will not result in that claim being dismissed.

To be clear, for each of the claims the Court has indicated state a claim, and thus granted summary judgment as to the First Defense, Plaintiff will still need to present "a legally sufficient evidentiary basis" on each of these claims at trial to survive a motion under Fed. R. Civ. P. 50(a).

### a.    Unjust Enrichment (Count One)

The Amended Complaint does not state a claim for unjust enrichment against any Defendant under either New Jersey or New York law.

"[U]njust enrichment law[] do[es] not vary in any substantive manner from state to state." Snyder v. Farnam Cos., 792 F. Supp. 2d 712, 723 (D.N.J. 2011) (collecting cases). In New Jersey, a plaintiff must show "(1) at plaintiff's expense (2) defendant received [a] benefit (3) under circumstances that would make it unjust for defendant to retain [the] benefit without paying for it." Id. (internal quotation omitted). Similarly, in New York, a plaintiff must show "(1) the other party was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered[.]" Georgia Malone & Co., 19 N.Y.3d at 516 (internal quotation omitted).

---

[4] Defendants argue that Plaintiff's motion for summary judgment on this defense is moot because Defendants filed the Rule 12(c) motion discussed above. (Defs.' Br. at 16). It is not. The Rule 12(c) motion was based solely on statute of limitations grounds. The defense of failure to state a claim upon which relief can be granted is preserved through trial, regardless of whether it is asserted in motion practice prior to trial. See Fed. R. Civ. P. 12(g)(2), (h)(2).

Typically, unjust enrichment is a quasi-contractual remedy to prevent one party from unjustly benefiting at the other's expense, despite the lack of a formal, enforceable contract. See Georgia Malone & Co., 19 N.Y.3d at 516; Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790 (2012) ("Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled[.]"); Castro, 370 N.J. Super. 282, 299. That is not this case. Plaintiff did not, for example, fail to receive payment for services rendered to Defendants, or fail to receive services from Defendants for payment rendered. Indeed, Coastal apparently performed the work covered by the subcontract despite not receiving the checks Harry Vassallo allegedly diverted to the CSM account.

Instead, what Plaintiff purports to bring as an unjust enrichment claim is actually a tort: the Amended Complaint alleges that "[a]s a result of the wrongful and illegal actions of the Defendants," that is, the diversion of the checks without Plaintiff's knowledge, "the Defendants received a benefit from the Plaintiff in the form of monies that did not belong to the Defendants." (Compl. ¶ 26). But under New York law, "unjust enrichment is not a catchall cause of action to be used when others fail[,]" and is "not available where it simply duplicates, or replaces, a conventional . . . tort claim[.]" Corsello, 18 N.Y.3d at 790. Likewise, New Jersey law "does not recognize unjust enrichment as an independent tort cause of action"; rather, in tort law, avoiding this type of "unjust enrichment" is merely "a justification for other torts such as fraud or conversion." Castro, 370 N.J. Super at 299.

Therefore, summary judgment on the First Defense—failure to state a claim—is not warranted as to Count One.

### b.    Tortious Interference with Contract (Count Two)

In New Jersey, tortious interference with contract occurs when a defendant "intentionally

and improperly interferes with the performance of a contract . . . between [plaintiff] and a third person by inducing or otherwise causing the third person not to perform the contract . . . [causing] pecuniary loss [] to the [plaintiff] from the failure of the third person to perform the contract." Nostrame v. Santiago, 213 N.J. 109, 122 (2013) (quoting Restatement (Second) of Torts § 766). In New York, "[t]ortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom[.]" Lama Holding Co. v. Smith Barney, 88 N.Y.2d 413, 424 (1996).

Plaintiff does not state a claim for tortious interference, because it does not allege any Defendant caused a third party to breach a contract. Rather, Plaintiff claims Defendants caused Plaintiff to breach its contract with Coastal by paying CSM instead of Coastal. This is not tortious interference under either New Jersey or New York law.

Accordingly, summary judgment on the First Defense is not warranted as to Count Two.

### c.  Fraud (Count Three)

In New Jersey, fraud requires "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Allstate New Jersey Ins. Co. v. Lajara, 222 N.J. 129, 147 (2015) (internal quotation omitted). Similarly, in New York, fraud requires "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." Lama Holding Co., 88 N.Y.2d at 421.

Rule 9(b) requires "all averments of fraud or mistake" to "be stated with particularity." Fed. R. Civ. P. 9(b). To comply with Rule 9(b), the circumstances surrounding the alleged fraud must be sufficiently pleaded to put the defendant on notice of the "precise misconduct with which [it is] charged." Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004), abrogated in part on other grounds by Twombly, 550 U.S. at 557. A plaintiff can meet this requirement by specifying "the who, what, when, where, and how: the first paragraph of any newspaper story." See Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007) (quotation omitted). A plaintiff can either identify "the date, place or time of the fraud," or may use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Id. (citations omitted). A plaintiff must allege "who made a misrepresentation to whom and the general content of the misrepresentation." Id. (citations omitted).

Accepting the Amended Complaint as true, Harry Vassallo told or led Plaintiff to believe Harry was the owner of Coastal and was collecting money Plaintiff owed to Coastal, for the purpose of inducing Plaintiff to give him two checks made out to CSM and a third made out to Coastal. Relying on Harry's representations, Plaintiff paid Harry the checks, and suffered damages when, in 2009, it had to pay Coastal again as part of the jury verdict. This is sufficient to plead a claim of fraud with specificity under either New Jersey or New York law.

However, there are no allegations in the Amended Complaint that Karen Vassallo directly participated in any of the actions constituting fraud. Nor are there any allegations of actions CSM itself took to defraud plaintiff. Therefore, the Amended Complaint does not state a claim for fraud as to Karen or CSM.

Accordingly, summary judgment on the First Defense is warranted as to Count Three

against Harry, but not against Karen or CSM.

### d. Civil RICO

The Amended Complaint alleges Defendants violated 18 U.S.C. § 1962(a), (b), (c), and (d). Section 1962(a) makes it unlawful

> for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

28 U.S.C. § 1962(a). Section 1962(b) makes it unlawful "for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Id. § 1962(b). Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Id. § 1962(c). Section 1962(d) makes it unlawful for anyone to conspire to violate § 1962(a), (b), and/or (c). Id. § 1962(d).

At the outset, § 1962(a) and (b) are inapplicable to the present case. For a claim based on § 1962(a), which prohibits investment of income derived from racketeering activity, a plaintiff's injury must have resulted from the investment of racketeering income, distinct from injury caused by the racketeering activity itself. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1188 (3d Cir. 1993). The Amended Complaint does not allege that Plaintiff was injured by the investment of racketeering income. Therefore, Plaintiff states no § 1962(a) claim. For a claim based on § 1962(b), which prohibits using a pattern of racketeering activity to acquire control of an enterprise engaged in interstate commerce, there must be a "specific nexus between control of a

named enterprise and the alleged racketeering activity." Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1411 (3d Cir. 1991). The Amended Complaint specifies CSM as the enterprise engaged in interstate commerce. (Compl. ¶ 44). But there is no allegation that any Defendant acquired CSM through racketeering activity, only that Defendants used CSM for racketeering activity. Therefore, Plaintiff states no § 1962(b) claim. Accordingly, the Court considers whether Plaintiff has stated a § 1962(c) claim and/or a § 1962(d) claim for conspiracy to violate § 1962(c).

To plead a RICO claim under § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 362 (3d Cir. 2010) (internal quotations omitted). A "RICO plaintiff [must also] show that the plaintiff suffered an injury to business or property and that the plaintiff's injury was caused by the defendant's violation of 18 U.S.C. § 1962." In re Avandia Mktg., Sales Practices & Prods. Liab. Litig., 804 F.3d 633, 638 (3d Cir. 2015) (citing 18 U.S.C. § 1964(c)).

Under the RICO statute, "a pattern of racketeering activity" requires at least two acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). "Racketeering activity" can include, among other things, mail fraud in violation of 18 U.S.C. § 1341. See 18 U.S.C. § 1961(1) (defining "racketeering activity"). The federal mail fraud statute prohibits the use of the mail for purposes of carrying out any scheme or artifice to defraud. See 18 U.S.C. § 1341. Where plaintiffs rely on mail fraud as the basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pleaded with particularity. Id.

As to the first two elements of the § 1962(c) claim, Harry Vassallo allegedly conducted CSM's affairs by soliciting payment from Plaintiff in the form of the three checks. Thus, the Court examines whether he conducted these affairs through a pattern of racketeering activity. Plaintiff

alleges the following predicate acts: (1) causing Plaintiff to place the three checks at issue into the mail (citing 18 U.S.C. § 1341); (2) transporting the three checks from New York to New Jersey (citing 18 U.S.C. § 2314); and (3) possessing the three checks, as well as two properties in New Jersey (citing 18 U.S.C. § 2315). (Compl. ¶ 48).

As set forth above, see supra Section IV.B.1.C, Plaintiff has pleaded with particularity a claim for fraud by Harry Vassallo. According to the Amended Complaint, this alleged fraudulent scheme was carried out through use of the mail, that is, Harry Vassallo had Plaintiff mail him the three checks he later diverted from Coastal. (Compl. ¶ 48). "It is not necessary that the [fraudulent] scheme contemplate the use of the mails as an essential element." Pereira v. United States, 347 U.S. 1, 8 (1954). Rather, "[a]ll that is required is that defendant[] knowingly participated in a scheme to defraud and caused a mailing to be used in furtherance of the scheme." United States v. Pharis, 298 F.3d 228, 234 (3d Cir. 2002). Thus, the three instances in which Harry allegedly caused Plaintiff to mail him a check may constitute a pattern of racketeering activity.[5] Additionally, Plaintiff alleges it was damaged by this pattern of racketeering activity under the same theory of damages as its other claims, namely, that it was forced to pay twice for Coastal's services because Harry never credited the three checks toward Plaintiff's account with Coastal. Thus, all the elements of a § 1962(c) claim appear to have been pleaded.

However, the Amended Complaint does not state a § 1962(c) claim against either Karen or CSM. Because CSM is the enterprise engaged in interstate commerce, it cannot also be a defendant for a § 1962(c) claim. Kehr Packages, Inc., 926 F.2d at 1411. As to Karen, although the Amended Complaint alleges she participated in racketeering activity generally, it does not allege she

---

[5] At this time, the Court expresses no opinion about whether the other acts in paragraph 48 of the Amended Complaint would constitute predicate acts for civil RICO purposes.

participated in the diversion of Plaintiff's checks. Thus, Karen's alleged violation of § 1962(c) did not cause Plaintiff's injury. See In re Avandia Mktg., 804 F.3d at 638. Nor do Plaintiff's conclusory allegations that Karen conspired with Harry in this instance give rise to a claim under § 1962(d). See Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989) ("A conspiracy claim [under § 1962(d)] must also contain supportive factual allegations.").

Accordingly, summary judgment on the First Defense is warranted as to Count Four against Harry Vassallo on the basis of the § 1962(c) claim, but not warranted as to Count Four against Karen or CSM.

### 2.    Statute of Limitations (Second Defense)

As discussed above with respect to Defendants' motion, Plaintiff's claims are timely under both New York and New Jersey's statutes of limitations. Therefore, Plaintiff has shown there is no genuine issue of material fact as to the Second Defense. Accordingly, summary judgment is warranted on the Second Defense.

### 3.    Lack of Jurisdiction (Third Defense)

Defendants concede the Court has personal and subject matter jurisdiction. (Defs.' Br. at 18). Therefore, summary judgment is warranted on the Third Defense.

### 4.    Unclean Hands (Fourth Defense)

The doctrine of unclean hands "gives expression to the equitable principle that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." Borough of Princeton v. Bd. of Chosen Freeholders of the Cty. Of Mercer, 169 N.J. 135, 158 (2001) (internal quotation omitted). The application of this doctrine is discretionary on the part of the Court. Id.

It appears Defendants' unclean hands defense is that Leibowitz, Plaintiff's president, was

involved in the alleged scheme to divert to CSM the checks due to Coastal. Defendants' explanation of Leibowitz's involvement is far from clear. See supra Section II.A. However, Plaintiff has not met its burden to show the absence of a dispute of material fact on this defense. See Celotex, 477 U.S. at 323. Indeed, if Leibowitz was somehow complicit on Plaintiff's behalf in Defendants' alleged scheme, the Court may decide in its discretion to apply the unclean hands doctrine. Defendants' evidence suggesting Leibowitz may have agreed to divert the checks, may have kept inconsistent records with respect to the checks, may have agreed to overbill Coastal, and personally received checks from CSM, taken together, is sufficient to create a genuine issue of material fact as to this defense.[6]

Accordingly, summary judgment on the Fourth Defense is not warranted.

### 5. Lack of "[N]egligence, [W]rongdoing or [B]reach of [D]uty as [C]laimed" (Fifth Defense)

The Court interprets the Fifth Defense as Defendants merely stating they have done nothing wrong—in effect, a summary denial of Plaintiff's factual and legal theories. (See Defs.' Br. at 19 ("[The Fifth Defense] alerts, as pleadings are meant to do, the plaintiff to issues to be raised by the defense during the case.")). There remain many genuine issues of material fact as to whether Defendants committed some or all of the wrongdoing alleged by Plaintiff. Therefore, summary

---

[6] Plaintiff's objection that this defense is based on a "made up story" that Defendants have never raised before now (Pl.'s Reply Br. at 8-9) is immaterial, because it bears only on credibility, which the Court cannot consider on this motion. See Marino, 358 F.3d at 247. Plaintiff is also incorrect that Defendants never pleaded this defense (Pl.'s Reply Br. at 15-16) because "unclean hands" is listed in the Answer to the Amended Complaint. (Ans. at 6). Moreover, Plaintiff's argument that it has been prejudiced in discovery by Defendants' failure to plead the specifics of the defense, namely, Leibowitz's involvement in the diversion of the checks (Pl.'s Reply Br. at 15-16), is unpersuasive—as explained above, see supra Section II.A, Defendants rely at least in part on evidence adduced at the trial between Coastal and Plaintiff, which appears to have explored Leibowitz's role in the diversion and the possibility he was involved in Defendants' alleged scheme. Plaintiff ought not to have been blindsided by Defendants' use of this evidence to contend Leibowitz may have been complicit in the alleged scheme.

judgment is not warranted on the Fifth Defense.

### 6. Contributory or Comparative Negligence (Sixth Defense)

Plaintiff contends the defense of contributory or comparative negligence is unavailable because it brought no actions for negligence. (Pl.'s Br. at 10). But under both New Jersey and New York law, apportionment based on comparative fault is possible even when a plaintiff is negligent and a defendant's tortious conduct is intentional. Blazovic v. Andrich, 124 N.J. 90, 107-08 (1991) ("[W]e reject the concept that intentional conduct is 'different in kind' from both negligence and wanton and willful conduct, and consequently cannot be compared with them."); Arbegast v. Bd. of Educ. of S. New Berlin Cent. Sch., 65 N.Y.2d 161, 168 (1985) ("[W]hat [N.Y. C.P.L.R. § 1411] requires comparison of is not negligence but conduct which, for whatever reason, the law deems blameworthy[.]").

Therefore, summary judgment is not warranted on the Sixth Defense.

### 7. Lack of Privity (Seventh Defense)

Lack of privity is a contract defense, which is inapplicable in the present case because this case does not involve contract claims. Super Laundry Equip. Corp. v. Chan, No. 13-7381(NLH)(AMD), 2015 WL 3953887, at *4 (D.N.J. Jun. 29, 2015); Gelman v. Rosen, No. 14-6790 (JBS/KMW), 2015 WL 1849903, at *4-5 (D.N.J. Apr. 22, 2015).

Therefore, summary judgment on the Seventh Defense is warranted.

### 8. The Entire Controversy Doctrine (Eighth Defense)

The Third Circuit has concluded that New Jersey's entire controversy doctrine, a state rule of procedure that discourages successive litigation concerning the same subject matter, "is not the right preclusion doctrine for a federal court to apply when prior judgments were not entered by the courts of New Jersey." Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 138 (3d Cir. 1999).

Here, the previous litigation was in Supreme Court, New York County, in New York state, not a New Jersey state court. Therefore, the entire controversy doctrine does not apply, and summary judgment as to the Eighth Defense is warranted.

## 9. Res Judicata (Ninth Defense)

Defendants evidently contend that both claim preclusion and issue preclusion apply to the instant action. (Defs.' Br. at 22-23). Defendants contend "the [e]ffect of claim preclusion is not definitively known at this time because the jury verdict in the New York case [between Coastal and Plaintiff] says nothing as to the determination of the outcome of the '[three] checks.'" (Id.). For this reason, according to Defendants, "Plaintiff is attempting to use a determination"—the jury verdict—"in another court as a sword against defendants when these defendants could have been brought in by plaintiff but were not made parties to the New York litigation." (Id. at 23).

Federal courts must give "the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." R & J Holding Co. v. Redev. Auth. of Cty. of Montgomery, 670 F.3d 420, 426-27 (3d Cir. 2011) (quoting Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 (1982)). Because the previous judgment at issue was entered in Supreme Court, New York County, in New York state, New York preclusion law applies. See id. Under New York law, neither claim preclusion nor issue preclusion applies.

Claim preclusion bars a claim "where a judgment on the merits exists from a prior action between the same parties involving the same subject matter." In re Hunter, 4 N.Y.3d 260, 269 (2005). This case does not involve the same parties as the previous action in New York state.

Issue preclusion requires (1) "the identical issue necessarily must have been decided in the prior action and be decisive of the present action," and (2) "the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination[.]"

Juan C. v. R.C. Cortines, 89 N.Y.2d 659, 667 (1997) (internal quotation omitted). Here, it appears Defendants seek to apply issue preclusion to the issue of whether Coastal credited the three checks to Plaintiff's account. But, as Defendants admit, "the [general] jury verdict in the New York case [said] nothing" about whether the three checks were credited to Plaintiff's account with Coastal. (See Defs.' Br. at 22-23). For this reason, the "identical issue" of whether Plaintiff received credit for the checks was not "necessarily . . . decided in the prior action[,]" nor was it "decisive of the prior action." Juan C., 89 N.Y.2d at 667.[7]

Therefore, summary judgment as to the Ninth Defense is warranted.

## V.    CONCLUSION

For the reasons above, Defendants' motion for judgment on the pleadings or alternatively for summary judgment is DENIED. Plaintiff's motion to strike the affirmative defenses is DENIED. Plaintiff's motion for summary judgment on the affirmative defenses is GRANTED in part and DENIED in part as follows:

Plaintiff's motion for summary judgment as to the First Defense (failure to state a claim) is GRANTED with respect to Counts Three (fraud) and Four (civil RICO) as asserted against Harry Vassallo only. Plaintiff's motion for summary judgment as to the First Defense is DENIED with respect to Counts One (unjust enrichment) and Two (tortious interference with contract) against Harry Vassallo, and DENIED with respect to all claims asserted against Karen Vassallo and CSM.

---

[7] Defendants' fear that Plaintiff can use the jury verdict as "a sword" is similarly unfounded. (See Defs.' Br. at 23). Plaintiff will still need to prove causation at trial, that is, that it suffered damages because of Defendants' actions. This will necessarily involve showing that the jury verdict in the case between Coastal and Plaintiff resulted in part because of Defendants' alleged diversion of the checks. Therefore, the jury verdict in the New York action has no preclusive effect on either side in the present case.

Plaintiff's motion for summary judgment is GRANTED as to the Second (statute of limitations), Third (lack of jurisdiction), Seventh (lack of privity between the parties), Eighth (the "Entire Controversy Doctrine"), and Ninth (res judicata) Defenses. Plaintiff's motion for summary judgment is DENIED as to the Fourth (unclean hands), Fifth (lack of "negligence, wrongdoing or breach of duty"), and Sixth (contributory or comparative negligence) Defenses.

Accordingly, Defendants may no longer assert the following affirmative defenses pleaded in the Answer: statute of limitations; lack of jurisdiction; lack of privity between the parties; the "Entire Controversy Doctrine"; res judicata; or failure to state a claim against Harry Vassallo on the fraud and civil RICO claims.

An appropriate Order accompanies this Opinion.

**CLAIRE C. CECCHI, U.S.D.J.**

Date: April 27, 2017